# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

VINCENT SYSTEMS GMBH,       )
                                )
       Plaintiff,           )
                                )
v.                           )     No.: 1:23-CV-2-CEA-MJD
                                )
FILLAUER COMPANIES, INC., and  )
MOTION CONTROL, INC.,        )
                                )
       Defendants.       )

## MEMORANDUM AND ORDER

This matter comes before the Court on two separate, but related, motions to compel discovery: (1) Plaintiff Vincent Systems GMBH's ("Plaintiff") Motion to Compel [Doc. 132[1]]; and (2) Defendants Fillauer Companies, Inc. ("Fillauer") and Motion Control, Inc.'s ("Motion Control," and together with Fillauer, "Defendants") Motion to Compel [Doc. 147]. The parties have fully briefed the motions and the Court conducted a hearing on September 29, 2025. The motions are ripe for review.[2]

## I.    BACKGROUND

The factual background of this case is set forth in detail in the District Judge's claim construction opinion and order, entered June 24, 2025 [Doc. 134]. For purposes of the instant discovery motions, it suffices to note that this is a patent infringement case involving Plaintiff's

---

[1] Docket No. 123 is the redacted version of Plaintiff's Motion to Compel. The Court will direct that Doc. 123 be terminated as moot.

[2] The Court does not here address Fillauer's pending Motion for Protective Order Regarding Plaintiff's Notice of 30(b)(6) Deposition to Fillauer [Doc. 156]. The parties agreed to an expedited briefing schedule, and the Court has set a telephonic hearing for October 16, 2025 [Doc. 162]. That motion will therefore be addressed by separate order.

patent for a finger element that may be used individually or as part of a prosthetic hand or arm. Plaintiff has incorporated the finger element into prosthetic hands, which are sold all over the world, including the United States.

Non-party TASKA Prosthetics Ltd. ("TASKA") is a New Zealand company that manufactures the prosthetic hands at issue in this action (the "Accused Products"). Plaintiff claims the Accused Products incorporate a finger element that infringes on its patent, which Defendants deny. But these Defendants play no role in the design, inspection, manufacturing, production, or repair of the Accused Products, and it appears undisputed that Defendants never disassemble the Accused Products or otherwise access the finger element in the ordinary course of business. Rather, Defendants' role is limited to distributing the Accused Products in the United States through Motion Control, which is Fillauer's wholly-owned subsidiary. Despite these uncontested facts, Plaintiff chose not to sue TASKA in this action[3] or seek third-party discovery directly from TASKA in accordance with Federal Rule of Civil Procedure 45. That decision has been the source of much consternation between the parties during the discovery phase of this case.

As procedurally relevant, on June 24, 2025, following the filing of Plaintiff's motion to compel and Defendants' response in opposition, the District Judge entered the claim construction opinion [Doc. 134], and shortly thereafter, a scheduling order for the infringement phase of this case [Doc. 137]. Fact discovery is set to close on December 2, 2025. On August 6, 2025, the undersigned entered an order setting a phone conference and in-person hearing (the "Hearing") for September 29, 2025, to address Plaintiff's motion to compel [Doc. 141]. The parties were further ordered to meet and confer and provide the Court with information prior to the Hearing, including, *inter alia*, a "list of particular TASKA documents or particular types of TASKA documents which

---

[3] Plaintiff is involved in patent litigation with TASKA in Germany.

[Plaintiff] contends are discoverable . . . and which [Plaintiff] seeks from Defendant(s)." [*Id.* at Page ID # 3328]. In the meantime, Motion Control filed its own motion to compel addressing documents related to Plaintiff's settlement of litigation in Germany against another third-party, Össur [Doc. 145], and the parties participated in mediation without success [Doc. 155]. As of the date of the Hearing, the parties had not taken any depositions.

On September 26, 2025, the parties filed a joint status report in accordance with the Court's August 6 order [Doc. 159]. Regarding the "list of particular TASKA documents or particular types of TASKA documents" mentioned above, Plaintiff provided a list of 12 categories of documents. Defendants agreed to make their best efforts to obtain documents for 11 of the 12 categories. However, in violation of the Court's August 6 order, Defendants refused to produce any of the TASKA documents "unless Vincent agreed in advance that it would not assert any waiver of privilege." [Doc. 159 at Page ID # 3725]. During the Hearing, the parties continued to dispute basic facts such as whether Plaintiff had ever asked Defendants to make TASKA (which, again, is based in New Zealand) available for a deposition, and whether the parties' briefs did or did not contain certain arguments.

The foregoing is a very brief synopsis of the considerable effort the Court has made to whittle down the parties' amorphous and consistently evolving arguments into actual rule- and law-based disputes susceptible to resolution by Court order or agreement.[4] Although there have

---

[4] To describe these discovery disputes as a moving target is an understatement. For example, at issue are, *inter alia*, potentially hundreds of communications that may (or may not) have taken place after the commencement of this litigation. Those communications were never disclosed in any medium because the parties expressly agreed at the early stages of this proceeding that there was no need to create and maintain a privilege log reflecting communications after the date on which Plaintiff filed the complaint. Plaintiff has apparently changed its mind. Similarly, Defendants' initial opposition to Plaintiff's motion to compel was based largely on the argument that they lack sufficient "control" to produce documents in TASKA's possession. By the time of

3

been moments of cooperation in this case, more often the parties have been obstinate, intentionally obtuse, and at times needlessly combative.[5] They have put the Court (and themselves) in the untenable position of unraveling multiple, partially-intertwined discovery disputes involving foreign entities, each with potentially significant implications for the infringement phase of this case, with little time left for depositions or any additional document production (let alone thoughtful review of any additional production before depositions). They have, in effect, asked the Court to dedicate its already scarce resources to giving a *third* discovery motion expedited consideration, presumably because they are keenly aware the record in this case does not justify any extensions to the looming December 2 discovery deadline.

With this context, the Court will turn to the pending motions. The Court will address the motions in their current form, as limited or refined by the parties' representations during the Hearing and the Court's prior findings. The Court has dispensed with certain formalities (*e.g.*, lengthy analysis of cases the Court did not find particularly helpful) in the interest of resolving these discovery disputes in a "just, speedy, and inexpensive" manner. Fed. R. Civ. P. 1 ("These rules govern the procedure in all civil actions and proceedings in the United States district courts . . . . They should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

---

the Hearing, however, Defendants had willingly produced hundreds of pages of TASKA documents and their counsel was openly representing to the Court that they represent TASKA in this action. This order serves as the culmination of what can only be described as a Sisyphean effort to keep up with the parties' carousel of arguments.

[5] This is perhaps best captured in the September 12 email exchange, docketed as Exhibit B to the September 26 joint status report [Doc. 159-2].

## II. DISCOVERY STANDARDS

At issue are two motions to compel, which are governed by Federal Rule of Civil Procedure 26. The scope of discovery under Federal Rule of Civil Procedure 26(b) is quite broad and allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Factors to consider include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Ultimately, the Court has "significant discretion to craft discovery resolutions in a manner that fairly permits each party to access proper discovery, in the realm of a particular controversy[.]" *May ex rel. May v. Ford Motor Co.*, No. 6:09-CV-165-GFVT, 2009 WL 10689351, at *1 (E.D. Ky. Dec. 15, 2009); *see also Nozinich v. Johnson & Johnson, Inc.*, No. 09-02105-dkv, 2011 WL 13124086, at *2 (W.D. Tenn. Apr. 4, 2011) (noting district courts exercise "considerable discretion in deciding disputed discovery issues").

## III. ANALYSIS

### A. Plaintiff's Motion to Compel [Doc. 132]

Plaintiff's motion is born from Motion Control's response to a single interrogatory Plaintiff propounded nearly two years ago. When asked to provide certain information regarding the Accused Products (including, but not limited to, the bases for Motion Control's noninfringement contention), Motion Control volunteered the fact of its dependence on and communications with TASKA:

Subject to and without waiving its objections, ***Motion Control states that it does not manufacture the Accused Products***, including the "finger elements" of any of the Accused Products. ***Nor does Motion Control repair "finger elements"*** of the Accused Products. The ***Accused Products are manufactured by unrelated, non-party TASKA***. Therefore, ***Motion Control's knowledge is limited to information provided by TASKA to Motion Control***. In addition to documents that are being produced concurrently with these responses, ***representatives from TASKA informed Motion Control*** that the threaded screw and drive shafts of the "finger elements" of the Accused Products were bonded with Loctite when manufacturing first began in 2017 and until early 2023. ***Motion Control was further informed*** that in early 2023, TASKA began welding together the threaded screws and drive shafts of the "finger elements" of the Accused Products, which is the method of attachment used today. Motion Control further refers Vincent to the following documents: *see*, *e.g.*, MC0001698, MC0001711, MC0001766, MC0001802, MC0002121, MC0002134, MC0003088, and MC0003089.

[Doc. 133-1 at Page ID # 3236–37 (emphasis added)]. Thus, Defendants depend primarily—if not exclusively—on information generated and provided by TASKA when it comes to the internal workings of the Accused Products. Plaintiff does not dispute this assertion. The record also reflects that Defendants have produced all documents provided by TASKA upon which Defendants intend to rely at trial [*see*, *e.g.*, Doc. 129-1 at Page ID # 3125–26, ¶¶ 10–12]. In its motion to compel, Plaintiff seeks additional "information from [TASKA] and communications [between]" TASKA and Defendants [Doc. 132 at Page ID # 3183]. During the Hearing, counsel for Plaintiff reiterated that Plaintiff seeks all communications (including, but not limited to, those involving counsel) with TASKA about the statements Defendants have already disclosed regarding why they contend the Accused Products do not infringe.

The parties' dispute at this stage is twofold. First, they disagree about whether Motion Control exercises "control" over any such additional TASKA documents sufficient to properly compel Defendants to obtain them from TASKA and produce them to Plaintiff, consistent with Federal Rule of Civil Procedure 34. Second, the parties disagree on whether Defendants should have to produce the communications with TASKA identified on their respective privilege logs,

with the gravamen of the dispute being whether Defendants waived any privilege by relying on information provided by TASKA. The Court addresses each argument below.

### 1. Control

Plaintiff first argues that Defendants should be compelled to produce responsive documents from TASKA because Defendants have the requisite "control" as contemplated by Federal Rule of Civil Procedure 34. The Court agrees. The record at this stage of the litigation makes clear that Defendants exercise a level of control sufficient to facilitate the production of documents for use in this action, for several reasons.

First, Defendants and TASKA are parties to a distribution agreement that requires, *inter alia*, TASKA to provide Defendants assistance in the event of litigation regarding the Accused Products [Doc. 133]. Second, prior to Plaintiff filing the instant motion to compel, Defendants produced several documents they admittedly obtained from TASKA outside the ordinary course of business, seemingly without any objection from TASKA. Third, as noted during the Hearing, Defendants' initial disclosures identified TASKA witnesses and directed Plaintiff to contact those witnesses only through Defendants' counsel. Fourth, following the Court's August 6 order [Doc. 141], Defendants requested and presumably obtained from TASKA an additional set of documents responsive to 11 of the 12 narrowed requests submitted by Defendants, again demonstrating their ability to access the requested information without objection from TASKA [Doc. 159].[6] Fifth, Defendants' counsel represented both to Plaintiff's counsel in an email and to the Court during the Hearing that they "represent both Motion Control and TASKA" for purposes of this proceeding,

---

[6] As mentioned above, Defendants apparently refused to produce these documents despite the Court's order, making clear they "would not agree to produce any of these documents until after an order on Vincent's motion to compel unless Vincent agreed in advance that it would not assert waiver of any privilege." [Doc. 159 at Page ID # 3725].

7

adding yet another layer of control [Doc. 159-2 at Page ID # 3735]. Sixth, Defendants' counsel stated during the Hearing that Defendants intend to call a TASKA witness to testify at trial, and they "believe" the TASKA witness "will voluntarily appear" without a court order or subpoena (*i.e.*, at Defendants' request). Finally, the parties represented during the Hearing that TASKA voluntarily participated in the Court-ordered mediation, further evidencing Motion Control's ability to procure TASKA's cooperation in pretrial matters.

All of these facts together compel the conclusion that Defendants exercise a level of influence over TASKA sufficient to create the "control" required by Rule 34. *See St. Clair Cnty. Emps. Retirement Sys. v. Acadia Healthcare Co., Inc.*, No. 3:18-cv-00988, 2022 WL 4095387, at *9–11 (M.D. Tenn. Sept. 7, 2022) (discussing standards and factors applied by courts in the Sixth Circuit when addressing Rule 34 control issues; finding control based on representations of accessibility made during discovery negotiations and "past production from [third party] email accounts"). The Court will therefore grant Plaintiff's motion in this regard and require Defendants to produce the additional categories of documents reflected in the September 26 joint status report [Doc. 159; Doc. 159-1], with the exception of the 12th category, which the Court will only partially order production of, as set forth immediately below.

As of the date of the Hearing, only one category of documents identified in the September 26 joint status report remained in dispute: "All drafts or versions" of 46 specifically identified documents which Motion Control previously produced [Doc. 159]. Plaintiff defends this category on the grounds that many of the previously produced documents are "clearly drafts, with no final version produced." [*Id.* at Page ID # 3726]. Defendants do not dispute that point; rather, they argue (1) Plaintiff never advised as to whether they were simply asking for the "formal versions" of such documents; and (2) searching for every draft of every document would be unduly burdensome [*id.*

8

at Page ID # 3726–27]. After reviewing the parties' correspondence pertaining to this limited issue, and the law applicable to the Rule 34 control issue, the Court finds it reasonable and proportional to the needs of the case for Defendants to take the following actions, as appropriate: (1) produce all final or formal versions of the 46 specifically identified documents not already produced; (2) identify by Bates Number any final or formal versions of the 46 already produced; and (3) for any other documents out of the 46, represent that no final or formal version of the document exists. The Court therefore **GRANTS** Plaintiff's motion in this regard and **ORDERS** Defendants take the aforementioned steps pertaining to the 12 categories of documents discussed above on or before **October 24, 2025**.

### 2. *Waiver*

Plaintiff also asks the Court to compel Defendants to produce *all* of their communications with TASKA, including those over which Defendants have asserted (or may later assert) the attorney-client privilege or work-product protection, based on Defendants' alleged waiver of such protections.[7] Much of the parties' initial briefing left unclear the basis for Plaintiff's assertion of waiver, as noted in the Court's August 6 order [Doc. 141 at Page ID # 3327–28 ("But other than [Motion Control's response to Interrogatory No. 2]—which conveys some factual information regarding changes to the design of the Accused Products over time—the Court cannot find any instance in which Plaintiff specifically identifies the allegedly offending disclosure of, or reliance on, any protected communications/information.")]. The Court therefore ordered Plaintiff to provide, *inter alia*, "an itemized list of all documents or information that Vincent contends (1) was

---

[7] These documents are identified in Defendants' respective privilege logs [Doc. 123-6 (Motion Control); Doc. 123-7 (Fillauer)].

9

disclosed by or affirmatively relied on by Defendants; and (2) upon which Vincent bases its argument of waiver." [*Id.* at Page ID # 3329].

On September 11, 2025, Plaintiff and Defendants jointly submitted the document attached as **<u>Exhibit A</u>** to this order (the "Waiver Chart"), which reflects that Plaintiff's claims of waiver are based on three general categories of conduct: (1) Defendants' numerous representations that the screw in the Accused Product is not axially movable, because it was glued to the motor shaft using Loctite from 2017–2023 and welded directly to the motor shaft from 2023 forward; (2) Defendants' representations that they conducted an investigation that included communications with TASKA, and that their knowledge is "limited to information provided by TASKA" [Doc. 133-1 at Page ID # 3237]; and (3) Defendants' production of the documents identified in Rows 19–62 of the Waiver Chart. As a result of this conduct, Plaintiff asserts that "Defendants waived any privilege by relying on some communications with TASKA, and should either produce other related communications or be precluded from relying on select communications as a basis for their defense in this case." [Doc. 135 at Page ID # 3309].

Defendants' response centers on what they argue is a distinction between protected information (which they have withheld) and mere factual information (which they have disclosed):

> Upon learning of Vincent's claim of infringement, Defendants[] hired counsel and conducted an investigation, by and at the direction of counsel. This investigation included, *inter alia*, information obtained from TASKA, the manufacturer of the accused products. Defendants maintain that the investigation, including communications with TASKA, is protected by attorney-client and work product immunities, but that the underlying factual information is not privileged and was properly disclosed.

[Exhibit A; *see also* Doc. 129 at Page ID # 3120–21 ("Motion Control simply disclosed facts about the structure of the accused TASKA hands derived from factual documents provided by TASKA, but no advice of counsel or work product was disclosed or relied upon."); Doc. 157 at Page ID #

10

3657 ("Currently pending before the Court is Vincent's motion to compel privileged and work product materials relating to Defendants' investigation and defense of this case; an investigation by and at the direction of counsel that included communications with the third-party manufacturer of the accused products, TASKA[.]")].

Both parties' positions are untenable. Plaintiff's position is plagued by the lack of meaningful limitation. That is, Plaintiff argues that by relying on and disclosing TASKA's explanation of a single fact (the method of attaching the screw to the motor shaft), Defendants have *completely* waived the attorney-client and work-product protection as to *all* communications with TASKA. The Court simply cannot make that finding on this record, especially in light of the absence of any other disclosure of alleged privileged information. For example, Plaintiff has not taken the position that any of the TASKA documents Defendants have produced or disclosed— many of which appear to be technical documents like assembly instructions and manuals— constitute work product or privileged communications. Undoubtedly these types of documents were *not* prepared in anticipation of litigation or for the purpose of obtaining legal advice, but rather simply as part of the development and design of the Accused Products. *See Ecolab, Inc. v. Ridley*, No. 1:22-cv-50-TRM-SKL, 2023 WL 11762788, at *8–9 (E.D. Tenn. Feb. 10, 2023) (describing contours of attorney-client privilege and work product protection); *see also Robinson v. Morgan Stanley*, No. 06 C 5158, 2010 WL 1050288, at *4 (N.D. Ill. Mar. 17, 2010) (disclosure of summary of counsel's confidential investigation did not constitute waiver where the summary included a "reference to attorney involvement," but "didn't reveal the substance of the underlying communications or analysis").

But Defendants' position is equally lacking in terms of specificity and clarity. On the one hand, Defendants assert their personal knowledge is based on statements by TASKA and that

"representatives from TASKA informed Motion Control" of certain facts (Interrogatory No. 2) upon which Defendants clearly rely in this case, including to support their "Affirmative Defense No. 2 (Non-infringement of the '666 patent)" and their "Counterclaim No. 1: Declaration of Non-Infringement of the '666 Patent." [*See* Doc. 40 at Page ID # 232 & 236]. On the other hand, Defendants claim that all of their communications with TASKA, other than those Defendants choose to disclose, are shielded from discovery. Defendants simply cannot have it both ways. *See In re United Shore Fin. Servs.*, No. 17-2290, 2018 WL 2283893, at *2 (6th Cir. Jan. 3, 2018) ("'Litigants cannot hide behind the privilege if they are relying on privileged communications to make their case' or, more simply, cannot use the privilege as 'a shield and a sword.'" (quoting *In re Lott*, 424 F.3d 446, 452–53 (6th Cir. 2005)).

On balance and after careful consideration, the Court finds Plaintiff has not demonstrated sufficient grounds for the broad waiver finding it seeks or at least sought when it filed the instant motion to compel—that is, a waiver of privilege or work product protections over *all* of Defendants' communications with TASKA. *See Barnard v. Powell Valley Elec. Coop.*, No. 3:18-CV-537-CEA-DCP, 2021 WL 6275267, at *3 (E.D. Tenn. Mar. 5, 2021) ("Proving privilege has not been waived would require proving a negative and is generally not required of proponents. However, once grounds for waiver have been demonstrated, proponents bear the burden to counter those grounds." (citation omitted)). The Court agrees with Defendants' contention that the investigation itself, to the extent it is composed of attorney mental impressions and legal analysis, is not discoverable on the current record. But the record is not clear enough for the Court to make meaningful distinctions between (1) factual statements that Defendants claim are so inextricably intertwined with the investigation that they should remain protected; and (2) factual statements that are simply contained within communications with TASKA that Defendants relied on and

12

Case 1:23-cv-00002-CEA-MJD    Document 169    Filed 10/15/25    Page 12 of 22
PageID #: 4009

intend to offer at trial. In other words, it certainly appears Defendants will attempt to prove their non-infringement affirmative defense and/or counterclaim by disclosing or describing potentially privileged communications or attorney-work-product materials at trial. *See Leibovic v. United Shore Fin. Servs., LLC*, No. 17-2290, 2018 WL 2283893, at *2 (6th Cir. Jan. 3, 2018) (finding attorney-client privilege "may be implicitly waived when [a] defendant asserts a claim that in fairness requires examination of the protected communications").

Nevertheless, and considering the foregoing, the Court concludes Plaintiff should be afforded the opportunity to ask Defendants ***and*** TASKA about the factual basis for Defendants' contentions in this case. The Court therefore **ORDERS** that Defendants take all reasonable steps to facilitate the deposition of a TASKA representative in accordance with Federal Rule of Civil Procedure 30(b)(6). The TASKA 30(b)(6) deposition **SHALL** take place prior to the close of discovery, and **SHALL** cover, but not necessarily be limited to, the following topics:

1. The communications referenced in Motion Control's response to Interrogatory No. 2, including, but not limited to, TASKA's representations to Motion Control about the manner in which the threaded screw and drive shafts of the Accused Products were bonded, and the identity of the representatives who made such representations to Motion Control; and

2. Documents TASKA provided to Defendants for production in this litigation, including, but not limited to, the documents identified in Motion Control's response to Interrogatory No. 2, the Joint Status Report, and rows 19–62 of the Waiver Chart.

During the deposition, Defendants' and/or TASKA's counsel shall lodge any objections on the basis of privilege or work product that they believe are appropriate, for the purpose of clarifying

the record for any future evidentiary disputes. Vincent **SHALL** serve the 30(b)(6) notice on Defendants on or before **October 31, 2025**. If Defendants are unable to facilitate the deposition for any reason—including, but not limited to, TASKA's refusal to participate without Court order—Defendants shall file a notice explaining the reason for their noncompliance on or before **November 12, 2025**. In that event, Defendants shall be prohibited from calling a TASKA witness at trial to testify on, at least, the two topics identified above.

While neither party has requested this relief, the Court concludes, in its discretion and given the troublesome history of discovery and current status of this case, that this relief best addresses the heart of the parties' dispute over the control and waiver issues Plaintiff asserts. Further, the notion of a TASKA deposition was discussed at the Hearing, and certainly the questions of whether Plaintiff should seek discovery directly from TASKA and whether and to what extent Defendants should be involved in facilitating that discovery, have been raised repeatedly. In fact, Fillauer represents in its most recent filing that it has "offered to make a TASKA witness available for a remote third-party deposition." [Doc. 168 at Page ID # 3966]. Moreover, Motion Control represented during the Hearing that it intends to call a TASKA representative to testify at trial, serving only to emphasize the importance of TASKA's testimony.

### C.    Defendants' Motion to Compel [Doc. 145]

The gravamen of Defendants' motion is the discoverability of documents generated and exchanged during a separate lawsuit between Plaintiff and non-parties Össur Americas, Inc. and Össur hf (collectively, "Össur") that Plaintiff filed in 2019 (the "Össur Litigation"). Defendants assert that the Össur Litigation "is the only other U.S. litigation involving the Asserted Patent," and resulted in a settlement that produced "the only known U.S. license of the asserted '666 patent." [Doc. 147 at Page ID # 3488; Doc. 158 at Page ID # 3714]. On July 21, 2023, Motion

Control served on Plaintiff several requests for production, including the following two pertinent to this dispute, presented along with Plaintiff's responses:

**REQUEST FOR PRODUCTION NO. 24:**

Any documents relating to allegations of the Asserted Patent against any third parties.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Vincent Systems objects to this Request to the extent it seeks information subject to the attorney-client privilege, the work product doctrine, the trial preparation protection, or any other applicable privilege, immunity, protection, or exemption. Vincent Systems further objects to this Request to the extent it seeks information already available to Defendant from its own files or from public sources.

Subject to its objections, and without intentionally withholding any non-privileged documents, Vincent Systems will produce, on a rolling basis, responsive, non-privileged documents to the extent such documents exist and are in Vincent Systems' possession, custody, or control and as they are kept in the usual course of business.

\*\*\*

**REQUEST FOR PRODUCTION NO. 33:**

All documents relating to or comprising existing royalty or license agreements and prospective royalty or license agreements negotiated (even if not consummated) and licenses considered relating to the Asserted Patent and related patents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

Vincent Systems objects to this Request to the extent it seeks information subject to the attorney-client privilege, the work product doctrine, the trial preparation protection, or any other applicable privilege, immunity, protection, or exemption. Vincent Systems objects to this Request as premature.

Subject to its objections, and without intentionally withholding any non-privileged documents, Vincent Systems will produce, on a rolling basis, responsive, non-privileged documents to the extent such documents exist and are in Vincent Systems' possession, custody, or control and as they are kept in the usual course of business.

15

[Doc. 145-10 at Page ID # 3397, 3399–3400]. On December 5, 2024—more than a year after serving the aforementioned responses—Plaintiff produced a license and settlement agreement between Plaintiff and Össur resolving the Össur Litigation (the "Össur Settlement").[8]

Motion Control then served third-party discovery on Össur to obtain documents relating to the Össur Litigation and Settlement, but Össur took the position that Motion Control should obtain such materials directly from Plaintiff. Motion Control therefore served Plaintiff with another set of requests for production on March 11, 2025, "specifically seeking documents related to the patent infringement lawsuits against Össur, and the resulting settlement and license agreements." [Doc. 147 at Page ID # 3492]. In serving its supplemental responses to these requests, Plaintiff asserted, for the first time, the existence of a settlement negotiation privilege shielding all or a portion of the requested information from disclosure [*id.* at Page ID # 3493]. After a meet-and-confer, Plaintiff agreed to produce "seven letters between Vincent and Össur negotiating a settlement and license agreement" that contained substantial redactions and that Plaintiff characterizes as "settlement negotiation documents related to reasonable royalties and damages calculations." [*Id.*; *see also* Doc. 147-2 through147-7 (the "Redacted Settlement Documents"); Doc. 154 at Page ID # 3638, 3639].

The Court understands that, as of the filing of this order, Plaintiff has already produced the settlement and license agreement with Össur and the Redacted Settlement Documents [Doc. 154 at Page ID # 3638, 3639]. Defendants nonetheless move to compel Plaintiff to produce the following: (1) "full, unredacted versions of the [Redacted Settlement Documents];" (2) Plaintiff's

---

[8] Plaintiff also produced another agreement that "included a license to the European counterpart of the '666 patent" that was referenced in the Össur Settlement [Doc. 147 at Page ID # 3491–92].

16

responses to Össur's interrogatories[9]; (3) "all drafts of the settlement and license agreement with Össur, or any portions thereof[;]" and (4) "all substantive correspondence between Vincent and Össur." [Doc. 147 at Page ID # 3510].

Plaintiff opposes the motion, relying almost exclusively on the settlement negotiation privilege adopted by the Sixth Circuit in *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003). As noted by Defendants, however, Federal Circuit (and not Sixth Circuit) law applies to the instant dispute. *See*, *e.g.*, *HLFIP Holdings, Inc. v. Rutherford Cnty.*, No. 3:19-cv-00714, 2020 WL 6481535, at *1 (M.D. Tenn. May 27, 2020) ("The Federal Circuit has exclusive jurisdiction over appeals of patent cases, and its law governs discovery disputes that concern issues of substantive patent law." (citing *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803–04 (Fed. Cir. 2000))); *see also In re MSTG, Inc.*, 675 F.3d 1337, 1341 (Fed. Cir. 2012) ("As to discovery matters, we have held that Federal Circuit law applies when deciding whether particular written or other materials are discoverable in a patent case, if those materials relate to an issue of substantive patent law."). And there appears no dispute that the Federal Circuit has never expressly adopted the settlement negotiation privilege. The parties nonetheless dispute the import of the Federal Circuit's opinion in *MSTG*.

Defendants rely heavily on *MSTG*, in which the Federal Circuit expressly rejected the reasoning of the *Goodyear* court and refused to adopt a blanket settlement negotiation privilege for several reasons. *MSTG*, 675 F.3d at 1342–48. There, the magistrate judge initially denied AT&T's motion to compel discovery into "the negotiations of" previously produced settlement agreements between MSTG and other alleged infringers, because AT&T "ha[d] not carried its

---

[9] Motion Control initially requested "all interrogatory responses in the Össur Litigation[,]" but has since narrowed its request to "Vincent's responses to interrogatories, i.e., *likely a single document*." [Doc. 147 at Page # 3510; Doc. 158 at Page ID # 3719 (emphasis in original)].

burden of showing why the settlement negotiations are relevant and discoverable under the standards of Rule 26." *Id.* at 1340. Following that ruling, however, AT&T sought reconsideration on the grounds that MSTG's expert's report—which had not been submitted to the magistrate judge prior to his order—contained an opinion that the royalty rates in the previously produced settlement agreements were not "comparable to the hypothetical negotiation between MSTG and AT&T." *Id.* According to the expert, this was because, *inter alia*, the previously disclosed settlement agreements with the other alleged infringers were "litigation related compromises[.]" *Id.*

The magistrate judge therefore granted AT&T's motion for reconsideration and ordered the production of negotiation documents leading up to the previously-disclosed agreements for several reasons: (1) "the negotiation documents 'might contain information showing that the grounds [the expert] relied on to reach his conclusions are erroneous[;]'" (2) the documents "could shed light on why the parties reached their royalty agreements[;]" and (3) the documents "could provide guidance on whether some or all of the licenses could be considered a basis for calculating a reasonable royalty between AT&T and MSTG." *Id.* The district court agreed with the magistrate judge, and the Federal Circuit denied MSTG's petition for writ of mandamus, holding that "in light of reason and experience, we hold that settlement negotiations related to reasonable royalties and damage calculations are not protected by a settlement negotiation privilege." *Id.* at 1348.

In the case at bar, both sides assert that *MSTG* supports their position. Plaintiff suggests that *MSTG*'s holding was nothing more than a narrow carveout to the settlement negotiation privilege (*i.e.*, although negotiations related to royalties and damages are discoverable, all other aspects of negotiations somehow remain protected). But that argument ignores the remainder of the *MSTG* court's opinion, which expressly rejects the establishment of a settlement negotiation

privilege. *See, e.g., id.* at 1347 (citing cases that impose "heightened standards for discovery in order to protect confidential settlement discussions," and finding that " the public policy goals argued to support a privilege can more appropriately be achieved by limiting the scope of discovery"); *see also In re City of Stockton*, 475 B.R. 720, 731–32 (Bankr. E.D. Cal. 2012) (citing *MSTG* and holding: "For purposes of the present situation, this court is persuaded by the Federal Circuit's comprehensive analysis [in *MSTG*] that a settlement negotiation privilege is not necessary. In particular, other tools in the toolbox—especially the protective order—are adequate to protect confidentiality of settlement discussions where necessary to promote settlement."). It would make little sense for the Federal Circuit to hold that no blanket settlement negotiation privilege exists while, at the same time, recognizing a settlement negotiation privilege by negative inference. The Court therefore finds that the requested documents from the Össur Litigation and the Redacted Settlement Documents are not protected by a settlement negotiation privilege, because no such privilege exists under Federal Circuit law. That does not, however, end the inquiry.

Defendants argue that by rejecting the settlement negotiation privilege adopted in *Goodyear*, the *MSTG* court effectively held that settlement negotiation documents are always discoverable. The Court respectfully disagrees, for two reasons. First, Defendants ignore the crucial distinction between the facts of *MSTG* and the circumstances surrounding this dispute—in *MSTG*, the expert's opinion placed the withheld negotiation documents at issue. *See MSTG*, 675 F.3d at 1348 (noting that "[a]fter MSTG's expert offered his opinion regarding a reasonable royalty for AT&T's alleged infringement, the magistrate judge reconsidered and ordered production of the negotiation documents 'because they might contain information showing that the grounds [MSTG's expert] relied on to reach his conclusion are erroneous,'" and affirming the reconsideration decision). When asked during the Hearing to identify some event in this case that

mirrored the expert's disclosure in *MSTG*, Defendants were unable to do so. The Court therefore finds the facts of *MSTG* distinguishable and therefore respectfully declines to adopt Defendants' argument.

Second, Defendants ignore the guidance provided by the *HLFIP* court, which explained that the mere absence of a settlement negotiation privilege does not, by itself, render all settlement-related documents discoverable:

> The Federal Circuit has also been clear in its position that "[t]he propriety of using prior settlement agreements to prove the amount of a reasonable royalty is questionable." Citing a foundational holding on the subject of reasonable royalties, the Court noted that "[t]he notion that license fees that are tainted by the coercive environment of patent litigation are unsuitable to prove a reasonable royalty is a logical extension of *Georgia-Pacific*, the premise of which assumes a voluntary agreement will be reached between a willing licensor and a willing licensee, with validity and infringement of the patent not being disputed."
>
> The Court finds that the evidence currently before it does not indicate that "negotiations documents" surrounding the settlement letters, if they exist, are relevant to the issue of reasonable royalties in this case. To the extent that the settlement letters themselves are relevant, they are already in Defendants' possession. Additionally, the documents and information sought by Defendants' discovery requests cannot be fairly characterized as "negotiations documents;" instead, they go to the identities of those who participated in drafting the letters and documents received in response (the latter of which, since the letters were directed to the Defendants themselves, are surely accessible to Defendants). No reading of the Federal Circuit's caselaw in this area leads to the conclusion that this is the type of discovery that would be considered relevant and permissible under *MSTG* and related cases.

*See HLFIP*, 2020 WL 6481535, at *4 (internal citations omitted). The *HLFIP* court found "that the discovery sought is not proportional to the needs of this case when evaluated using the factors set forth in Rule 26(b), considering the relative burden to each Party, the low likelihood of any benefit, and the de minimis importance of the issues." *Id.*, at *5. This decision is wholly consistent with *MSTG*'s explanation that a settlement negotiation privilege was not necessary in light of the

court's discretion to regulate discovery under Federal Rule of Civil Procedure 26. *MSTG*, 675 F.3d at 1346.

Plaintiff has already produced the settlement agreement and the Redacted Settlement Documents. Plaintiff concedes that it "did not apply these redactions because the redacted material is irrelevant, but rather because it is protected by the settlement negotiation privilege." [Doc. 154 at Page ID # 3643].[10] As the Court has already held the settlement negotiation privilege is inapplicable in light of *MSTG*'s holding, the Court **GRANTS** Defendants' motion to compel to the extent it seeks unredacted versions of the Redacted Settlement Documents. The Court also **GRANTS** Defendants' request for Plaintiff's responses to Össur's interrogatories in the Össur Litigation, finding that such documents are relevant and proportional to the needs of the case. Specifically, the Court notes that Plaintiff's sworn statements—which are currently accessible only to Plaintiff—regarding a prior assertion of claims related to the very same patent at issue in this case are likely to reflect information important to Defendants' defenses, and the burden of producing a single document is nominal. The Court **ORDERS** that Plaintiff produce the unredacted documents and interrogatory responses on or before **October 24, 2025**.

The Court **DENIES** Defendants' request for any other documents from the Össur Litigation, including, but not limited to, documents evidencing the parties' settlement negotiations or drafts of the produced settlement agreements. In light of the significant information Plaintiff has already produced and will produce in accordance with this order (*i.e.*, the final settlement agreement, license agreement, and unredacted correspondence), the production of additional

---

[10] Plaintiff's concession is unsurprising since, as noted in Motion Control's briefing, the lack of relevance is not a legitimate basis for unilaterally redacting documents. [*See* Doc. 147 at Page ID # 3504–06 and authorities cited therein].

21

amorphously-described settlement discussions or drafts of settlement and licensing agreements is both unnecessary and unduly burdensome, especially given the looming discovery deadline.

## IV.     CONCLUSION

For the reasons stated and to the extent set forth above, Plaintiff's motion to compel [Doc. 132] and Motion Control's motion to compel [Doc. 145] are each **GRANTED IN PART AND DENIED IN PART**. Defendants' request for an award of costs or fees incurred in defending against Plaintiff's motion [*see* Doc. 129 at Page ID # 3098] and in bringing Motion Control's motion to compel [*see* Doc. 158 at Page ID # 3722] is **DENIED** as the Court finds such an award is not justified on the current record. *See* Fed. R. Civ. P. 37.

The Clerk is respectfully directed to **TERMINATE AS MOOT** the redacted version of Plaintiff's motion to compel [Doc. 123].

SO ORDERED.

ENTER:

/s/
MIKE DUMITRU
UNITED STATES MAGISTRATE JUDGE